UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS GOODMAN,

        Petitioner,                         Civil Action Number: 2:09-cv-11672

v.                                              Honorable Arthur J. Tarnow

CARMEN PALMER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF
HABEAS CORPUS BUT ISSUING A CERTIFICATE OF APPEALABILITY**

**I.  INTRODUCTION**

This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Curtis Goodman is a Michigan prisoner currently incarcerated by the Michigan Department of Corrections at the Thumb Correctional Facility in Lapeer, Michigan.  He filed this habeas petition, through counsel, challenging his 2006 Wayne County, Michigan jury convictions of four counts of first-degree criminal sexual conduct (CSC I) and one count of second-degree criminal sexual conduct (CSC II).  Petitioner was originally sentenced to concurrent prison terms of eighteen years, nine months to fifty years in prison for each CSC I conviction and seven to fifteen years in prison for the CSC II conviction.  Upon resentencing, he was resentenced to concurrent prison terms of fifteen to fifty years for each CSC I conviction.  The sentence with respect to the CSC II conviction was unaffected and remained unchanged.

Petitioner raises claims concerning the effectiveness of trial counsel.  Specifically trial counsel's failure to object to the admission of objectionable hearsay testimony and the opinions of two witnesses as to the veracity of the complainant.  He challenges his sentencing with respect

to the trial court's decision to increase his sentencing-guidelines range by utilizing facts that were not proven to a jury beyond a reasonable doubt. For the reasons stated, the Court will deny the petition. However, the Court will issue Petitioner a certificate of appealability with respect to his ineffective-assistance-of-counsel claim.

## II. BACKGROUND

### A. Substantive Facts

The Michigan Court of Appeals summarized the underlying facts of this case, which are presumed correct on habeas review. See *Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x 730 (6th Cir. 2002) (citations omitted). The Court of Appeals stated:

> In May 2005, the victim, a 10-year-old boy, reported to his school's social worker that defendant, a close friend of the victim's mother, had been "bothering" him. The victim told the social worker that he had been living with defendant since January 2005 and reported that defendant frequently forced him to engage in oral and anal sex. School officials called the Detroit Police Department. Soon thereafter, an officer with the department took the victim to the Sixth Precinct in Detroit for further questioning, and the victim again described the instances of sexual abuse committed by defendant.
>
> At trial, the victim described the most recent instance of sexual abuse that had occurred. According to the victim, defendant picked him up from his father's house but did not take him to school. Instead, defendant and the victim went to the victim's mother's house. The victim's mother was not home. Defendant and the victim were watching television and started wrestling. Then, defendant began touching the victim's genital area. Although the victim told him to stop, defendant put his genitals near the
> victim's mouth and "talk[ed] about sucking it." The victim declined. Soon thereafter, defendant came up behind the victim and "started humping on [him]." Defendant pulled down the victim's shorts. The victim felt something "inside [his] butt" that was painful. Defendant ejaculated.
>
> The victim testified that defendant had performed similar actions approximately 14 or 15 times before, admitted that "sometimes" defendant inserted his penis inside the victim's anus and described another instance in which anal sex occurred. The victim also testified that defendant had forced him to perform oral sex at least three times.

*People v. Goodman*, No. 269620, 2007 WL 2429227, at *1 (Mich. Ct. App. Aug. 28, 2007).

The following testimony is pertinent to the case.

The victim's mother, Vaneeta Witcher testified. She said Petitioner watched her son from January 2005 until May 2005, and sometimes he spent the night at Petitioner's house. She referred to Petitioner as her brother, although he was not her actual brother. According to Witcher, Petitioner called her, sometime in June 2005 when he was scheduled to pick up her son at school, and said "Vaneeta, I think [] done trying to jam you. I think he done went in there and told them people that you [sic] child abusing him." Trial Tr. vol. II, 82 Feb. 15, 2006. She said Petitioner left her son at the school because he did not want the police to catch him because he had several outstanding tickets. Ms. Witcher testified that she eventually found her son at the Sixth Precinct.

When she arrived at the precinct, the police sat her down and told her that her son had told them that Petitioner had "touched" her son. Trial Tr. vol. II, 84 Feb. 15, 2006. She said she did not believe them. She said she then talked with her son while at the police station. She testified that "[h]e looked me in my face and he said, '[m]a, I never ever would try to destroy your friendship with your brother but your brother touched me and I need for you to believe me.'" Trial Tr. vol. II, 86 Feb. 15, 2006. She said she did not believe him. She said she then confronted her son in front of Petitioner and kept on asking him "[i]t didn't happen, did it?" *Id.* Eventually, her son told her that it did not happen. However, when they got home he broke down and said, "I'm your son, you're supposed to believe me." Trial Tr. vol. II, 87 Feb. 15, 2006. On cross-examination, she said she thought her son and Petitioner would watch television

and "just chill" together. She said when she arrived at the school, no one was there to speak to her about the incident.

Officer Jason Tonti, the officer called to the school to investigate, testified that the victim told him that his uncle had sexually abused him. Trial Tr. vol. II, 108 Feb. 15, 2006. Officer Tonti said he saw someone leave the school as he arrived. That person left his car, "jumped the fence and left the location, just left." Trial Tr. vol. II, 110 Feb. 15, 2006. That person was later identified as Petitioner.

Petitioner's counsel stipulated to the testimony of Officer Jeffrey Elgert. Had Officer Elgert testified, "he would testify that he came along with his partner to [the school], talked to the victim who reported sexual abuse by his uncle, talked to the principal and a school social worker." Trial Tr. vol. II, 116 Feb. 15, 2006. Officer Elgert also would have said that he "talked to the defendant at the scene who came to pick the victim up but left on foot. At that time[,] the defendant, Mr. Goodman, told him he did not want to go to jail for driving without a license." *Id.*

Petitioner also testified. He said he never touched the victim in a sexual manner. According to Petitioner, he was called to the school because the victim had been suspended for fighting and he was asked to come and pick him up. He said when he arrived, he called Ms. Witcher and had her speak with the social worker. He said he gave the police his driver's license, address, and phone number, in case they needed to contact him. He said he first learned about the allegations when he was at the victim's father's house.

The jury convicted Petitioner. He was sentenced as described.

## B. Procedural Facts

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of Appeals, raising four claims, one claim concerning trial counsel's failure to object to the admission of eight instances of hearsay testimony and opinion testimony from two different witnesses as to the veracity of the victim, and three claims concerning his sentencing. On August 28, 2007, the Court of Appeals affirmed his convictions and sentences. *Goodman*, 2007 WL 2429227, at *5.

Petitioner then filed an application for leave to appeal the Court of Appeals's decision with the Michigan Supreme Court, raising what appears to be the same four claims. On February 1, 2008, the Michigan Supreme Court issued an order vacating Petitioner's sentences and remanding the case to the Circuit Court for the limited purpose of resentencing Petitioner under properly scored guidelines, but in all other respects denying Petitioner's application. The Supreme Court stated:

> On order of the Court, the application for leave to appeal the August 28, 2007 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we VACATE the defendant's sentences, and we REMAND this case to the Wayne Circuit Court for resentencing under properly scored guidelines. The defendant should have been scored zero points for OV 11 where there was no record evidence to support a finding that any charged or uncharged criminal sexual penetration arose out of a sentencing offense. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court.

*People v. Goodman*, 480 Mich. 1052, 743 N.W.2d 890 (2008) (internal citations omitted) (Corrigan, J., not participating).

On April 17, 2008, pursuant to the above-order, the Circuit Court resentenced Petitioner to the terms described above.

Petitioner neither filed a post-conviction motion with the state trial court nor a petition for a writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition on May 1, 2009.

### III. STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal-habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770 (2011), the United States Supreme Court stated: "A state court's determination that a claim lacks merit precludes federal

6

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Court further stated:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87 (internal citation omitted).

A federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)).

## IV.  DISCUSSION

### A.  Trial Counsel Was Not Ineffective

In his first habeas claim, Petitioner argues that trial counsel was ineffective for failing to challenge the opinion testimony of two witnesses concerning the victim's veracity and for failing to challenge several instances of inadmissible hearsay.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Id.* at 687.  Second, the petitioner must

establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the

question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.  *Id.* at 788.

Not specifically citing the *Strickland* standard, but rather citing to several Michigan cases that expressly employed the *Strickland* standard, the Court of Appeals denied relief on this claim, finding that Petitioner had failed to establish that counsel was ineffective.  The Court of Appeals first explained:

> With respect to defendant's argument that his trial counsel was ineffective for failing to challenge the opinion testimony of two witnesses concerning the victim's veracity, we note that "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness because credibility matters are to be determined by the jury." However, defendant fails to identify the witnesses and statements to which he refers.  We speculate that he is referring to a statement by the school social worker, who testified that when the victim told her about the alleged abuse, she "looked in his eyes" and saw "sincerity."

*Goodman*, 2007 WL 2429227, at *2.

> At trial, Velma Jordan, the school social worker, testified as follows:
>
> [PROSECUTOR]:  So what happened then?
> [JORDAN];  Um, went into the little office area and, um, we sat down and he prefaced the conversation by saying, "Miss Jordan, um, I'm gay."  And I said, "[], what have O told you guys about that?" because the guys kind of had a thing about calling each other names and it was something that I had talked to them about and not being appropriate to do.  And so I said, "What have I said to you about that and why are you saying that?" and, um, he said, "Because my mother's – my uncle has been bothering me."
> [PROSECUTOR]:  Now let me back up a little bit.  When he said this to you, did you have an opportunity to view his face?
> [JORDAN]:  Yes.
> [PROSECUTOR]:  Did you get a chance to look in his eyes?
> [JORDAN]:  As a matter of fact, you know what?  At first I wasn't looking at him, and then when I did turn to look at him when I went to explain to him about not – and yes, I did look in his eyes.
> [PROSECUTOR]:  And –

9

> [DEFENSE COUNSEL]: I'm going to object to this. This is speculation.
> [THE COURT]: Overruled. She can testify as to what she did and what she perceived. It's personal knowledge.
> [PROSECUTOR]: Thank you, Your Honor.
> [PROSECUTOR, continuing]: And what did you see in his eyes, ma'am, or what type of expression did he have or what type of emotion was he showing?
> [JORDAN]: Sincerity . . . .

Trial Tr. vol. II, 8-9 Feb. 15, 2006.

After the social worker testified that the victim had approached her about the incident and she said that she could tell that the victim was sincere by the look in his eyes, defense counsel objected. The Court of Appeals noted that the trial court overruled the objection because the social worker was permitted to testify as to her perceptions, and found that counsel's performance in that regard was not deficient because she raised an objection. *Goodman*, 2007 WL 2429227, at *1-2.

This Court agrees with the Court of Appeals. Moreover, the Court finds that Petitioner continues to provide no further illumination in his habeas pleadings other than his naked assertions with respect to this claim. The Court finds that the Court of Appeals did not apply an unreasonable determination of the facts in this regard.

The Court of Appeals discussed the admission of the inadmissible hearsay as it related to Petitioner's trial counsel. Three of the prosecution's witnesses testified to the victim's statements concerning the sexual abuse. The Court of Appeals stated that counsel's failure to object to those admissions was in fact unreasonable and was deficient. The Court of Appeals found that there were no exceptions to the hearsay rule that would make any of those three instances admissible hearsay. The Court of Appeals stated:

> Three of the prosecution's witnesses testified regarding the victim's statements concerning the alleged sexual abuse. The school social worker testified:

10

>      And so then I asked him to clarify what he was–what he meant by hurting him and he said, 'Well, he does sexual things to me, um, in the home at night.' There are other people that live in the home but he would wait until these people were in bed and then he would come into the room where he was and he said that, um, he did oral sex and that he does it–quote 'He does it to me in my butt.' [Trial Tr. vol. II, 11 Feb. 15, 2006].

The victim's mother testified:

>      He looked me in my face he said, 'Ma, I never ever would try to destroy your friendship with your brother but your brother touched me and I need for you to believe me.' With tears running down his eyes he said, 'I'm your child and I need you to believe that your brother has been hurting me.' [Trial Tr. vol. II, 86 Feb. 15, 2006].
>
>      In addition, a police officer testified, "the victim said that his uncle had been sexually abusing him."

*Goodman*, 2007 WL 2429227, at *3.

Additionally, trial counsel for Petitioner stipulated that the second police officer, that was unavailable for trial, would have testified that the victim told him that he was being sexually abused by his uncle.

In addressing these issues, the Court of Appeals found:

> [D]efense counsel should have challenged the hearsay statements made by the social worker, the victim's mother, and a police officer. Also, she should not have stipulated that, had a second police officer testified, he would have testified that the victim told him he had been sexually abused by defendant. There was no conceivable trial strategy for allowing the jury to hear these damaging allegations against defendant repeated by multiple witnesses.

*Goodman*, 2007 WL 2429227, at *3.

The Court agrees with the Court of Appeals that defense counsel should have challenged the above-referenced statements, and therefore, her failure to do so, resulted in deficient performance. However, in order for Petitioner to succeed on an ineffective-assistance claim, he

11

also must show that the attorney's deficient representation was so prejudicial that, but for those errors, the result of the trial would have been different. Here, the Court of Appeals concluded:

> Even if the trial court ruled the evidence inadmissible, the social worker, the victim's mother, and a police officer would likely have testified that they took certain actions as a result of what they learned from the victim. This would tend to show that the victim told them about the alleged sexual abuse and that they believed him. Moreover, the victim testified at trial and there is reason to believe that the jury was persuaded by his testimony. The victim was 10 years old when he reported the abuse and 11 years old when he testified at trial. He was old enough to have had a clear understanding of what was happening to him and his testimony was competent and consistent. Accordingly, there is no indication that the absence of the hearsay statements in question would have tipped the scales in defendant's favor.

*Goodman*, 2007 WL 2429227, at *3-4.

The Court agrees with the Court of Appeals's decision finding, that the state trial court's ruling was not an unreasonable application of *Strickland*. In finding that counsel's failure to object to the hearsay testimony in question was not prejudicial to Petitioner, the Court of Appeals emphasized the believability or credibility of the victim's testimony. The record in this case reveals that the victim's testimony was consistent, and, therefore, his testimony alone could support the jury's verdict, even after being subjected to a thorough cross-examination by defense counsel. The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's sexual-assault conviction. *See United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (citing *Gilbert v. Parke*, 763 F.2d 821, 826 (6th Cir. 1985)).

Additionally, Petitioner presented witnesses in his defense and he himself testified. The jury obviously did not find either Petitioner's witnesses or Petitioner credible.

Given that, the Court concludes that Court of Appeals reasonably determined that, even if the hearsay testimony in question had not been admitted, the absence of such

testimony would not have changed the jury's verdict in this case. The outcome of the trial was fair and reliable, notwithstanding the admission of the hearsay testimony.

Therefore, the Court concludes that Petitioner is not entitled to habeas relief with respect to his ineffective-assistance-of-trial-counsel claims.

### B. Sentencing Guidelines Are Not Cognizable

In his second habeas claim, Petitioner alleges that his sentence is unlawful because his minimum-sentence-guidelines range was increased based on facts not proven to jury beyond a reasonable doubt or admitted by him. Thus, he claims that his constitutional rights were violated. In support of his claim, he relies on *Blakely v. Washington*, 542 U.S. 296 (2004), in which the United States Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)); *see also United States v. Booker*, 543 U.S. 220, 232 (2005) (same).

Petitioner is not entitled to habeas relief on his claim. *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence within a minimum and maximum sentence. *See People v. Claypool*, 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006) (both citing Mich. Comp. Laws § 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set a minimum sentence." *Drohan*, 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the

minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 256 n.7, 666 N.W.2d 231, 237 n.7 (2003) (citing Mich. Comp. Laws § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool*, 470 Mich. at 730, 684 N.W.2d at 286. Therefore, Michigan's indeterminate sentencing scheme is unaffected by the United States Supreme Court's holding in *Blakely*. *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791.

The holding in *Blakely* is inapplicable to Petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *Blakely*, 542 U.S. at 304-05, 308-09. The holdings in *Apprendi* and *Blakely* do not apply to a judge's fact finding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *see also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial fact finding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing). As noted by the Sixth Circuit, "[T]he Sixth Amendment gives a criminal defendant the right to have a jury find any fact that increases the *maximum* sentence the defendant faces, not any fact that increases the *minimum* sentence." *Arias v. Hudson*, 589 F.3d 315, 317 (6th Cir. 2009) (citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986)) (emphasis in original).

Petitioner was convicted of four counts of CSC I and one count of CSC II. Pursuant to Michigan law, the conviction for CSC I subjected Petitioner to a sentence of "life or for any term of years." Mich. Comp. Laws § 750.520b. The conviction for CSC II subjected Petitioner to a sentence of "not more than 15 years." Mich. Comp. Laws § 750.520c. Upon resentencing Petitioner was sentenced to serve fifteen to fifty years for the CSC I conviction and his sentence of seven to fifteen years in prison for the CSC II conviction remained unchanged. His sentences are entirely consistent with Michigan law. Because he received a sentence within the range permitted by Michigan law as a result of his convictions, any additional fact-finding in which the trial court may have engaged did not violate his rights under *Blakely*. Petitioner is not entitled to habeas relief on his *Blakely* claim.

### C.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires a district court to "issue or deny a [COA] when it enters a final order adverse to the applicant . . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings.

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306,

1307 (6th Cir. 1997).  To receive a COA, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

      The Court finds that reasonable jurists could debate the Court's resolution of Petitioner's claim with respect to his ineffective-assistance-of-counsel claim.  Therefore, the Court issues Petitioner a COA with respect to that claim.

## V.  CONCLUSION

      IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

      IT IS FURTHER ORDERED that the Court issues Petitioner a Certificate of Appealability in regard to his ineffective-assistance-of-counsel claim.


                              S/Arthur J. Tarnow
                              Arthur J. Tarnow
                              Senior United States District Judge

Dated: May 24, 2012

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on May 24, 2012, by electronic and/or ordinary mail.

                              S/Catherine A. Pickles
                              Judicial Assistant